1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HEIGHTS AT ISSAQUAH RIDGE OWNERS
ASSOCIATION, a Washington non profit
corporation, as assignee of Derus Wakefield I,
LLC, a Washington limited liability company, and
Steven Derus,

                        Plaintiff,

             v.

STEADFAST INSURANCE COMPANY, a
Delaware Corporation, AND ZURICH
AMERICAN INSURANCE COMPANY, a New
York Corporation,

                        Defendants.

CASE NO. C07-1045RSM

ORDER ON MOTION TO COMPEL

This matter is now before the Court for consideration of plaintiff's motion to compel, Dkt. # 18.
Plaintiff seeks to compel defendants to produce complete and unredacted copies of certain documents
regarding loss reserves and reinsurance.   Defendants have opposed the motion.  The Court has fully
considered the parties' memoranda and exhibits, and for the reasons below shall grant in part, and deny in
part, the motion.

DISCUSSION

The facts of this matter are well-known to the parties and need not be set forth in detail.  Briefly
stated, this case arises from a construction-defect case litigated in King County Superior Court.  The
Heights at Issaquah Ridge Owners Association, plaintiff here, sued developer Derus Wakefield I, LLC
("Wakefield") regarding the construction defects.   Defendant Steadfast Insurance Company

ORDER ON MOTION TO COMPEL - 1

("Steadfast") had issued two commercial general liability policies to Derus Development Company. Plaintiff asserts that it is undisputed that Derus Wakefield was a named insured under one of the two policies, designated the "01" policy. Defendant Steadfast denied coverage to Wakefield under the other policy, the "00" policy. Plaintiff and Wakefield settled the state court action, and Steadfast paid the one million dollar policy limit under the "01" policy. In the settlement, Wakefield stipulated to entry of judgment against it and assigned its rights against Steadfast under the "00" policy to plaintiff. Steadfast has appealed the judgment in the state court action and that appeal is currently pending. Plaintiff in this action asserts Wakefield's claims of bad faith, breach of contract, and Consumer Protection Act violations against Steadfast, as assignee under the settlement.

In this motion, plaintiff seeks to compel production of information regarding loss reserves and reinsurance that was redacted from the claims file information provided by Steadfast in discovery. This Court has ruled previously that neither loss reserves nor reinsurance is relevant to a bad faith claim, and that neither is discoverable. *Amazon.com, Inc., v. Atlantic Mutual Insurance Company*, C05-719 RSM, Dkt. # 264. Plaintiff argues that the Court should instead follow the ruling in *Lexington Insurance Company v. Swanson*, 240 F.R.D. 662 (W.D.Wa. 2007), in which loss reserve information was held to be relevant. *Id.* at 668.

In that ruling, the court stated that,

> Washington courts have suggested that relevance is rarely a proper grounds in a bad faith case for refusing to produce documents contained in the insurer's claims file *See, e.g.*, *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 393 n. 10 (1987), *disapproved of on other grounds by Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn. 2d 766 (2001), (noting that "In general, the relevancy objections raised by [the insurer] . . . are meritless because the very nature of most bad faith actions makes most, if not all, of the insurer's claims file relevant.')

*Id*. The court also cited to the California case of *Lipton v. Superior Court of Los Angeles County*, 48 Cal.App. 4th 1599 (1996), stating that

> [t]he *Lipton* court held that reserve information was discoverable because such information would assist the plaintiff in evaluating his bad faith case and in preparing it for trial. The *Lipton* decision is consistent with other cases evaluating this issue. Indeed one treatise has observed that "[t]o this writer's knowledge, no case has held that reserves evidence is irrelevant in a bad faith case."

*Id., quoting* Stephen S. Ashley, *Bad Faith Actions Liability & Damages* § 10:31 (2006). The Court has reviewed these authorities and has determined that they to not compel the same result here.

ORDER ON MOTION TO COMPEL - 2

First of all, relevance is not a question that is determined by Washington (or California) law. Questions of relevancy and admissibility of evidence in this diversity case are governed by the Federal Rules of Evidence. *American Protection Insurance Company v. Helm Concentrates, Inc.,* 140 F.R.D. 448 (E.D.Cal. 1991).   Pursuant to those rules, a party may obtain discovery of  "any matter, not privileged, that is relevant to the claim or defense of any party. . . ."  F.R.Civ.P. 26(b)(1).   One court has noted recently that this language, amended in 2000, left the scope of discovery in federal litigation narrower than it is under many state court rules.  *Bernstein v. Travelers Insurance Company*, 447 F. Supp. 2d 1100, 1102-03 (N.D.Cal. 2006).

When read in context, the statement quoted above, that "to this writer's knowledge, no case has held that reserves evidence is irrelevant in a bad faith case," actually appears to express the writer's surprise that he could find no such case.[1]   The quoted section of the treatise—which appears to be a practice manual rather than a scholarly treatise—opens with the following paragraph:

> The extent to which insurers sued for bad faith freely disclose information concerning their reserves and allow reserves to be admitted into evidence without objection is surprising. The admission of reserves information should raise strong concerns, both with regard to the reliability and prejudicial effect of such evidence and with regard to the public policies that reserves are intended to promote.

Stephen S. Ashley, *Bad Faith Actions Liability & Damages* § 10:31 (2006).   The complete paragraph bearing the above-quoted language regarding the writer's inability to find cases holding reserve information irrelevant states,

> To this writer's knowledge, no case has held that reserve evidence is irrelevant in a bad faith case.  One may find support for the irrelevancy objection, however, in cases holding that reserves evidence is irrelevant to the issue whether a policy should be interpreted to provide coverage. [FN 29]: *Leski, inc., v. Federal Ins. Co.,* 129 F.R.D. 99, 106 (D.N.J. 1989), related reference, 736 F. Supp. 1331 (D.N.J. 1990) ("[T]he setting of reserves is performed by claims personnel who know little about [the insured's] policies.  I find that the reserve information is only tenuously relevant to whether insurance coverage exists in this matter and this information is not discoverable at this time.")

*Id*.

Under Washington law, reserves are required for an insurance company to conduct business in the state.  RCW 48.12 *et seq*.  The purpose of the requirement, which is found in many states' statutes,  is to

---

[1] By contrast, the author discussed several cases in which loss reserves were found irrelevant in the context of a case involving insurance coverage.

ORDER ON MOTION TO COMPEL - 3

1  ensure that there is adequate money available to pay claims.   The setting of reserve amounts may be an

2  accounting decision, made by claims personnel with no knowledge of the particulars of the insured's

3  actual policies.  *Leski v. Federal Insurance Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989).  As stated by a

4  district court in California, a state with a similar statutory reserve requirement, "[t]he legislature and

5  Insurance Commissioner establish reserve policy.  For this reason alone, a reserve cannot accurately or

6  fairly be equated with an admission of liability or the value of any particular claim."  *In re Couch*, 80

7  B.N.R. 512, 517 (S.D.Ca. 1987); *citing Union Carbide v. Travelers Indemnity Company*, 61 F.R.D. 411,

8  413 (W.D.Pa. 1973).   The district court thus reversed the bankruptcy court's ruling allowing discovery

9  of insurance reserves.  *Id.*

10      Plaintiff asserts that defendants' reliance on *In re Couch* is misplaced, because "California courts

11  now hold that reserve information is discoverable because such information will assist a plaintiff in

12  evaluating a bad faith case and in preparing for trial."  Plaintiff's Reply, Dkt. # 25, p. 3; *citing Lipton v.*

13  *Superior Court of Los Angeles County*, 48 Cal. App. 4th at 1616. S  However, the rule in *Lipton* is not

14  nearly as broad or certain as plaintiff represents.  Instead, the *Lipton* court "refus[ed] to adopt a *per se*

15  rule of 'discovery irrelevance'" and "reject[ed] the conclusion that information related to the reserves a

16  carrier designated on a particular claim could never be discoverable in a bad faith case."  *Bernstein v.*

17  *Travelers Insurance Company*, 447 F. Supp. 23d 1100, 1106 (N.D. Ca. 2006).   Thus, rather than flatly

18  stating that loss reserves are relevant in a bad faith action, the *Lipton* court declared that loss reserve

19  information "**may or may not be relevant** in a subsequent bad faith action, depending on the issues

20  presented."  *Lipton*, 48 Cal.App. at 1614 (emphasis added).   Thus, the relevance of the requested

21  information must be tied to the specific issues presented, and the issue determined on a case-by-case

22  basis.

23      *Lipton* was decided under California state discovery rules, which allow discovery of "any matter,

24  not privileged, that is relevant to the subject matter involved in the pending action . . . " *Id.* at 1611;

25  *citing* Cal. Code Civ. Proc. § 2017(a).   The scope of discovery under the Federal Rules of Civil

26  Procedure, allowing discovery of "any matter, not privileged, that is relevant to the claim or defense of

27  any party . . . ," is narrower.   F.R.Civ.Proc. 26(b)(1); *Bernstein*, 447 F. Supp. 2d at 1103.

28      Plaintiff here has asserted claims of bad faith, breach of contract, and violation of the Washington

ORDER ON MOTION TO COMPEL - 4

Consumer Protection Act.   A claim of bad faith in Washington is not easy to establish--- the insured has

a heavy burden to meet.  *Overton v. Consolidated Insurance Co.*, 145 Wash. 2d  417, 433 (2002) (*citing*

*Ellwein v. Hartford Accident & Indemnity Co.*, 142 Wash. 2d 766, 775 (2001).

> To succeed, the insured must show the insured's breach of the insurance contract was
> "unreasonable, frivolous, or unfounded."  If the insurer's denial of coverage is based
> on a reasonable interpretation of the insurance policy, there is no action for bad faith.

*Id.* (*quoting Kirk v. Mt. Airy Insurance Company,* 134 Wash. 2d 558, 560 (1998).  In moving to compel

disclosure of loss reserves, plaintiff has not asserted how such information would be relevant to the claim

of bad faith or to what plaintiff must establish in order to prevail on that claim.  Nor has plaintiff asserted

how the loss reserve information would be relevant to establish any element of a Consumer Protection

Act claim.[2]  The motion to compel information on loss reserves is accordingly DENIED.

Plaintiff has also moved to compel discovery of reinsurance policies and related communications.

With respect to reinsurance, the policies themselves are discoverable under rule 26(a)(1)(D).  *Great*

*Lakes Dredge and Dock Co. v. Commercial Union Assurance Co.*, 159 F.R.D. 502, 504 (N.D.Ill. 1995).

The rule is absolute, and does not require a showing of relevance.  *United States Fire Insurance*

*Company v. Bunge North America*, 244 F.R.D. 638, 641 (D.Kan. 2007); *citing National Union Fire*

*Insurance Co. of Pittsburgh v. Continental Illinois Corp.*, 116 F.R.D. 78, 83-84 (N.D.Ill. 1987).  The

rule does not, however, extend to communications between insured and reinsurer regarding the

reinsurance policies.  *Excelsior College v. Frye*, 233 F.R.D. 583, 585 (S.D.Cal. 2006).   To obtain

discovery of those communications, plaintiff must demonstrate their relevance to the bad faith claim.

One court has cleverly explained the reason why reinsurance matters are rarely relevant to a claim

of bad faith:

> Underwriters' purchase of reinsurance may show their subjective belief or intention, but it
> does not mean a primary insurance policy was in effect. [FN 1].  If, however, other evidence
> supports plaintiff's position that the policy was in effect, reinsurance in the face of denial of
> coverage might suggest bad faith. [Plaintiff] also believes bad faith would be demonstrated

---

[2] Those elements, if not established *per se* through a violation of the insurance code, are as
follows: (1) the action complained of is an unfair or deceptive act or practice;  (2) the action occurred in
the conduct of trade or commerce; (3) there is a public interest component to the conduct; (4) there was
injury to the plaintiff's business or property;  and  (5) there is a causal link between the unfair act and the
injury suffered.  *Nordstrom, Inc., v. Tampourlos*, 107 Wash. 2d 735, 739 (1987); citing *Hangman Ridge
Training Stables, Inc., v. Safeco Title Insurance Co.*, 106 Wash. 2d 778, 780 (1986).

ORDER ON MOTION TO COMPEL - 5

with the opposite outcome—lack of reinsurance.  That hay could be made from either outcome is probably the best demonstration that the probative value of this information is little.

FN 1: Reinsurance agreements, which at best reflect an undisclosed unilateral intention, are irrelevant to determining the intent of the parties to the primary insurance contract.  Thus, they would be non-discoverable, even were a finding of ambiguity made.  *Rhone-Poulenc*, 139 F.R.D. at 611-612.

*Great Lakes Dredge and Dock Company v. Commercial Union Assurance Company*, 159 F.R.D. 502, 504 (N.D. Ill. 1995); *citing Rhone-Poulenc Rorer, Inc., v. Home Indemnity Co.*, 139 F.R.D. 609, 611-12 (E.D.Pa 1991).

Reinsurance involves an insurance company's effort to spread the burden of indemnification. *Leski*, 129 F.R.D. at 106.  It is a decision based on business decisions and not questions of policy interpretation.  *Id.*  This is particularly so when the reinsurance is treaty insurance, as it is here.  Under a reinsurance treaty, the reinsurer agrees to accept an entire block of business from the insured.  *North River Insurance Co. v. Cigna Reinsurance Co.*, 52 F. 3d 1194, 1199 (3rd Cir. 1995).   There is no connection between the claims asserted against defendant Steadfast, and Steadfast's reinsurance of a block of its insurance policies, that would make that reinsurance relevant to the claims asserted here.

Plaintiff's motion to compel discovery of reinsurance documents is therefore GRANTED as to the policies themselves, pursuant to F.R.Cvi.Proc. 26(a)(1)(D), but DENIED as to all other reinsurance documents, including communications.

DATED this 13th day of December 2007.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO COMPEL - 6